STATE OF VERMONT

ENVIRONMENTAL COURT

| | |
|---|---|
| Secretary, Vermont Agency of Natural Resources, } Plaintiff, } } v. } Docket No. 85-5-97 Vtec } (post-judgment petition) Richard F. Towns, Respondent. } } | |

Secretary, Vermont Agency of Natural Resources,　}
　　　Plaintiff,　}
　　　　　　　}
　　　v.　}　　Docket No. 85-5-97 Vtec
　　　　　　　}　　(post-judgment petition)
Richard F. Towns, Respondent.　}
　　　　　　　}

Decision and Order

In an earlier case involving this respondent, Docket No. 162-10-96 Vtec, this Court had ruled that Respondent had violated 10 V.S.A. §6605(a) and the Solid Waste Regulations from January 1, 1980 to June 28, 1987, and had remanded the remedial order to the Agency of Natural Resources. In response to that remand, in Docket No. 85-5-97 Vtec the Secretary of the Vermont Agency of Natural Resources (ANR or the Agency) issued a second administrative order pursuant to 10 V.S.A. §8008 regarding Respondent. The purchasers of the property, James and Christine Wilkens, intervened to protect their interests, as the primary issue then remaining in this matter was whether what is now their property should be dug up and to what condition it should be restored afterwards.[1] Respondent is

---

[1] They stated as their position that they have been unable to sell their property, due to the "fill" deposited on their property by Mr. Towns prior to their purchase of it; that the materials placed on the land should be completely removed and replaced by clean, properly compacted fill; that they not bear any expense; that their driveway, well, cellar drainage, septic system, and swimming pool be replaced, in good working order, after the work is done; that only the trees that will be in the fill area be taken down and that those be replaced with trees of equal quality, size and age; and that accommodations are made for the Wilkens family during construction. In the November 20, 2001 and January 4, 2002 entry orders, and several times in the pretrial conferences leading up to the hearing in this

1

represented by John L. Franco, Esq., the Secretary is represented by Gary Kessler, Esq., and Intervenors Wilkens are represented by Paul S. Gillies, Esq.

In December of 2002, after a period of time during which the Supreme Court appeal of Docket No. 162-10-96 Vtec and a related Washington Superior Court case between Respondent and his insurer were resolved, this Court issued a decision and order affirming the administrative order and requiring Respondent to submit a remediation plan for the site. Respondent submitted a plan which was approved by the Waste Management Program of the Agency by letter in mid-March of 2004.

After the Agency filed a petition for contempt, the parties settled this matter for an agreed remedial order requiring Respondent to comply with the remediation plan as approved in March of 2004, which was entered as an order of the Court (the Remediation Consent Order) in the above-captioned case on October 12, 2004.

The Agency again seeks an order of civil contempt, as Respondent has not complied with the remediation plan. Respondent asserted his present inability to pay as a defense, and, after a period of delay due to Respondent's health issues,[2] an evidentiary hearing was held on that issue before Merideth Wright, Environmental Judge. The parties were given the opportunity to submit written memoranda and requests for findings.

Upon consideration of the evidence[3] and of the written memoranda and requests for

matter, the Court noted the possibility that some or all of the relief sought by the Wilkens was not necessarily available to them in this proceeding but might properly be the subject of an action in Superior Court.

[2] Respondent was 69 years of age at the time of the ability-to-pay hearing and had had a stroke in November of 2004 that prevented him from attending that hearing.

[3] Respondent's motion to strike the Florida appraisal records is denied, even though they are provided in the form of printouts from the website pages, as the documents are certified by the Sarasota County Property Appraiser's Office as being a true and correct copy of the data.

findings filed[4] by the parties, the Court finds and concludes as follows.

The remediation plan consists essentially of digging up all the waste deposited at the site, disposing of it properly, and replacing it with clean compacted fill. The Agency required this plan, and Respondent agreed to it, despite the issue reflected in the Court's 2002 decision regarding whether the jurisdiction of 10 V.S.A. Ch. 201 would have limited it to an order restoring the land to the condition existing before the violation.

Under the present posture of this case, given the 2002 decision and the Remediation Consent Order, the Court only has before it the question of whether Respondent is in civil contempt for failing to carry out the Remediation Consent Order, or whether he instead lacks the present ability to carry out the Remediation Consent Order.

The Remediation Consent Order is estimated to cost $295,000 to excavate and properly dispose of all the discarded material, to fill the area with clean material, and to place a layer of topsoil and seed it. Without the clean fill, topsoil and seeding, the excavation and proper disposal of the discarded material is estimated to cost $203,000.

While the portion of Respondent's current income not held jointly with his wife[5] is only approximately $28,000, the present litigation was filed as an administrative order in early 1997, and had been discussed between Respondent and ANR personnel since at least as early as mid-April of 1996. Since the time that Respondent became aware of the problem that resulted in the present litigation and order, Respondent has engaged in property and business transactions involving substantial amounts of money. He sold Vermont property

---

[4] The Agency's motion to strike Respondent's reply memorandum is denied, as that memorandum responded to issues raised for the first time in the Agency's responsive memorandum.

[5] Their joint tax return in 2004 reflected an income of $57,000.

owned in his own name (or in a revocable trust in his own name and controlled by him) amounting to proceeds of approximately $185,000. Vermont property was purchased in his wife's name in the year 2000, from which sales were made in 2004 amounting to proceeds of $364,000; the remaining portion of that property, including a house, is valued at $193,000 and is where Respondent and his wife reside when they are in Vermont.

In addition, in 1995 Respondent sold his Vermont waste management business for net proceeds of $1,350,000, of which Respondent retained $680,000 and transferred $600,000 to an offshore trust known as the "Towns Family Irrevocable Trust." $205,000 remains in the trust. Respondent holds a joint checking account with his wife which contained approximately $46,000 in September of 2005. Respondent holds a joint bank account with his wife which contained approximately $500,000 in September of 2005, at least in part representing the proceeds of the sale of Florida property purchased in 1997 for 160,000 and sold August 31, 2005 for $606,000. Respondent owns two other Florida condominium properties, one in which he has a life estate is valued for tax purposes at $124,000, and the other, in which he resides when in Florida, which was purchased for $65,000 relatively recently.

Respondent entered into the Remediation Consent Order in October of 2004 that required the remediation now at issue. Many of the transactions took place while the litigation was pending or even after Respondent had entered into the settlement. Respondent cannot now claim that because he is unable to fund the entire remediation plan out of his current income, he is somehow excused from responsibility for taking any steps at all towards carrying out the Remediation Consent Order to which he himself agreed two years ago. This is not a situation in which Respondent's financial situation changed unexpectedly in the period after he entered into the Remediation Consent Order.

Respondent has not met the burden of showing a present inability to pay. He is under an obligation to carry out the Remediation Consent Order even if the full funding

4

of the relief he agreed to must await the sale of some property or some adjudication in other litigation. In the present case he is under an affirmative obligation to take steps and make financial arrangements towards the carrying out of his agreed responsibilities. The Court is not persuaded that he is unable to obtain credit or to pay into an escrow account or to make other arrangements to secure the ultimate payment of the cost of the remedial work with a mortgage or other payment mechanisms, including consideration of the proceeds of any future sales of property, investments, or insurance.

Based on the findings, conclusions, and reasoning of this decision, pursuant to 12 V.S.A. §§121-123; V.R.E.C.P. 4; V.R.C.P. 70 and the Court's inherent power of contempt, to enforce court orders issued under 10 V.S.A. Chapter 201, it is hereby ORDERED and ADJUDGED that Respondent is in contempt of court for failing to take any steps towards carrying out the Remediation Consent Order.

To purge himself of contempt, on or before November 17, 2006, Respondent shall place a letter of credit, performance bond or other financial responsibility instrument or other security in escrow, or combination thereof, to the amount of $295,000,[6] and shall make arrangements to have the work done that is required by the Remediation Consent Order, and shall file a proposed schedule for the performance of that work. If Respondent fails to make arrangements for the work to be done, the Court will consider entry of an

---

[6] Although the Secretary now only requests that $203,196 be placed in escrow, there is no basis to require this reduced amount until or unless the requirements of the Remediation Consent Order are amended by agreement of the parties or by order of the Court. Similarly, although the Secretary now requests that the Court "add" Mrs. Towns to the case, this Court has no jurisdiction to do so in the present posture of this case, as the underlying administrative order did not name her as a party and as the rules governing attachment, trustee process, and interpleader are not available in these proceedings. V.R.E.C.P. 4(a)(3).

order pursuant to V.R.C.P. 70 directing that the work be done at Respondent's cost by an appointee of the Court, and will solicit nominations by the parties of persons willing and able to serve in that capacity.

Done at Berlin, Vermont, this 1st day of November, 2006.

_____
Merideth Wright
Environmental Judge